**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

PETER GRILLOT,  :

                Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                Defendant.  :

Case No. 3:08-cv-0111

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on December 23, 2002, alleging disability from November 6, 2002, due to type II diabetes, stroke, a heart condition, and back pain. (Tr. 70-72, 78). Plaintiff's application was denied initially and on reconsideration. (Tr. 51-60). A hearing was held before Administrative Law Judge Melvin A. Padilla, (Tr. 776-803), who determined that Plaintiff is not disabled. (Tr. 466-86). The Appeals Council remanded to Judge Padilla for consideration of new evidence. (Tr. 488-90). A second hearing was held by Judge Padilla, who again determined that Plaintiff was not disabled. (Tr. 17-35). The Appeals Council denied Plaintiff's request for review, (Tr. 7-9), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff has severe functional symptoms of left-sided hemiplegia and a mild cognitive disorder of undetermined

3

etiology, borderline left carpal tunnel syndrome with mild left ulnar neuropathy at the elbow and normal fine and gross manipulation, diabetes mellitus, and an ongoing history of prescription drug medication abuse, (Tr. 23, ¶ 3), but that he does not have an impairment or combination of impairments that meet or equals the Listings. (Tr. 25, ¶ 4). Judge Padilla also found that Plaintiff has the residual functional capacity to perform a limited range of light work. (*Id.*, ¶ 5). Judge Padilla then used sections 202.13 through 202.15 and 202.20 through 202.22 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 34, ¶ 12). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 35).

Plaintiff has been under pulmonologist Dr. Castaldo's care since at least September, 1999, for his longstanding history of severe obstructive sleep apnea requiring the use of a C-PAP machine. (Tr. 184-95).

Dr. Elshoff has been Plaintiff's treating physician since at least October, 2001. (Tr. 201-05, 361-40). Dr. Elshoff treated Plaintiff for diabetes mellitus, hypertension, hyperlipidemia and morbid obesity, adjusted Plaintiff's medications, and counseled him regarding compliance with a diet and exercise program. *Id.*

Plaintiff was hospitalized November 9-14, 2002, after experiencing left-sided tingling, numbness, and weakness. (Tr. 160-83). Plaintiff's primary diagnoses were stroke and hypothyroidism with inadequate suppression of TSH and he was treated with medications. *Id.* Plaintiff was evaluated by neurologist Dr. Kitchener who noted that Plaintiff's EEG was mildly abnormal. *Id.* At the time Plaintiff was discharged, his numbness was essentially resolved but he

still had some residual weakness in his left upper extremity and in two fingers of the left hand. *Id.*

Following his hospitalization, Plaintiff participated in physical therapy November 22-December 30, 2002. (Tr. 198-200). Plaintiff's treatment plan included strengthening, balance, mobility, and gait training, he made very minimal progress, and the assessments of his progress were somewhat inconsistent. *Id.*

Dr. Elshoff reported on January 20, 2003, that Plaintiff continued to have problems with his speech and left-sided weakness, had been released from physical therapy due to lack of dramatic benefit, still had significant poorly controlled hypertriglyceridemia as well and inadequate control of his diabetes, compliance with diet and exercise was an issue, and that gastric bypass would possibly be of benefit. (Tr. 201). Dr. Elshoff also reported that he had broadened the differential diagnosis to include primary psychiatric etiology of his complaints partially due to the lack of direct evidence to support a stroke by imaging done thus far and given the feedback from the physical therapists that Plaintiff's rehab did not progress as that typical of other stroke patients. *Id.*

On January 28, 2003, Dr. Kitchener reported that Plaintiff had some mild scanning speech, good motor strength in his extremities, used a cane to walk, and that from a neurological standpoint, no further work-up was indicated. (Tr. 206). Dr. Kitchener also reported that Plaintiff could return to sedentary work and that he should have a neuropsychological evaluation performed. *Id.*

Plaintiff consulted with Dr. Kumar on January 28, 2003, for evaluation and management of his uncontrolled type II diabetes. (Tr. 246-49). Dr. Kumar reported that Plaintiff was morbidly obese with a body mass index of more than 40, was not very compliant with diet or exercise, used a cane to walk, demonstrated no definite weakness in his arms or legs, and that he was

5

alert and oriented. *Id.* Dr. Kumar identified Plaintiff's diagnoses as uncontrolled type II diabetes mellitus, history of noncompliance, morbid obesity, hypertension, hyperlipidemia, hypothyroidism, cerebrovascular disease, sleep apnea, depression, bronchial asthma, and coronary artery disease. *Id.*

On March 3, 2003, Plaintiff was evaluated by a mental health care provider at Dettmer Outpatient Services. (Tr. 215-18). Plaintiff's diagnoses were identified as rule out diagnosis of dementia, vascular type, mild, and a rule out depressive disorder. *Id.* Plaintiff was assigned a Global Assessment of Functioning (GAF) score of 50. *Id.* Plaintiff cancelled his follow up appointment due to financial issues. (Tr. 215).

Examining neuropsychologist Dr. Smith reported on March 6, 2003, that he had examined Plaintiff on February 10 and 20, 2003, that Plaintiff walked slowly and with the aid of a cane, had difficulty with balance, and complained of fatigue and left-sided weakness and numbness. (Tr. 274-86). Dr. Smith also reported that Plaintiff was mildly disoriented to time, his remote memory was impaired, his rate of speech was significantly slowed, and that he evidenced delayed responses. *Id.* Dr. Smith noted that testing revealed that Plaintiff's expressive and receptive language abilities were basically intact, his speech was dysarthric and slurred, his basic visual function appeared to be intact, his left-sided motor function appeared to be impaired in terms of motor strength, speed, and dexterity, he seemed to have sensory abilities on the left hand, and that overall his sensorimotor impairment was consistent with a right hemisphere stroke affecting the motor and sensory strip. *Id.* Dr. Smith noted further that Plaintiff had significant variability among his test data for attention and information processing, his ability to learn and remember new information was quite variable, his ability to perform written arithmetic was in the average range,

6

his general cognitive functioning and proficiency were mildly impaired, and that he had no significant disinhibition behaviorally or emotionally. *Id.* Dr. Smith identified Plaintiff's diagnoses as cognitive disorder NOS, depressive disorder NOS, noncompliance to medical regime, relational problem, and rule out conversion disorder. *Id.* Dr. Smith opined that Plaintiff's current functional status was consistent with a return to gainful employment, that test data indicated that Plaintiff would not be able to function in the type of job activities he previously performed on a full-time basis, that performing light duty tasks might be a reasonable course of action, and that he (Dr. Smith) had reservations about Plaintiff operating a motor vehicle or being in the vicinity of or operating potentially hazardous mechanical equipment. *Id.*

On March 24, 2003, Dr. Elshoff identified Plaintiff's diagnosis as rehabilitated cerebral vascular accident and he opined that Plaintiff was able to return to work pending a second opinion from a company doctor. (Tr. 361).

Plaintiff consulted with neurologist Dr. Jacobs on May 28, 2003, who reported that Plaintiff was alert and oriented, his mood and affect appeared appropriate, his motor strength appeared symmetric though there was some giveaway weakness on the left and repeated attempts at cooperation did suggest that the strength was essentially intact, and that at one point there was a suggestion of a dropped foot on the left which was more apparent with walking and slight tendency to drag the left foot. (Tr. 512-14). Dr. Jacobs also reported that Plaintiff's sensory exam and reflexes were symmetric in the upper and lower extremities, his coordination was without ataxia or dysmetria, and that he walked with a stiff left leg, widened base and unsteady gait. *Id.* Dr. Jacobs noted that Plaintiff presented with a history of an apparently acute event of likely ischemic origin probably affecting the right hemisphere and probably consistent with the right posterior parietal

7

region with sensory changes predominantly in the left face, arm, and leg. *Id.* Dr. Jacobs also noted that Plaintiff may have secondarily decompensated to some extent from a psychological standpoint and that the clinical examination suggested limited involvement from a motor or sensory standpoint. *Id.* Dr. Jacobs opined that based on his neuropsychological assessment that Plaintiff's ability to return to a stable and gainful employed position appeared limited. *Id.*

Plaintiff received treatment from Dr. Rawlins from June 3, 2003, through at least December 29, 2006. (Tr. 329-60; 751-70). On June 9, 2003, Dr. Rawlins reported that Plaintiff had been disabled since November, 2002, due to CVA, dementia, and left hemiplegia. *Id.* On June 27, 2003, Dr. Rawlins reported that Plaintiff' diagnoses were CVA with left hemiplegia, diabetes mellitus, hypertension, asthma, short-term memory loss, coronary artery disease, hyperlipidemia, degenerative disc disease lumbosacral spine, and mild dementia. *Id.* Dr. Rawlins also reported that Plaintiff had motor weakness, slow and deliberative speech, a wide-based gait, and dyspnea with exertion. *Id.* Dr. Rawlins opined that Plaintiff was unable to care for his needs independently due to both psychiatric and physical residuals from a cerebral vascular accident. *Id.* On October 1, 2004, Dr. Rawlins reported that Plaintiff had good to fair to poor abilities to make occupational adjustments, unlimited to good to fair abilities to make personal and social adjustments, and good to fair to poor intellectual functioning, that he was able to lift/carry up to 15 pounds, stand for less than 1 hour in an 8 hour day and for 20 minutes without interruption, and that his ability to sit was not affected by his impairments. *Id.*

After examining Plaintiff a second time, Dr. Smith reported on May 27, 2004, that Plaintiff walked with a cane, wore an orthotic on his left foot for his left foot drop, and wore a brace on his right hand. (Tr. 296-306). Dr. Smith also reported that based on Plaintiff's comprehensive

8

neuropsychological exam of February, 2003, Plaintiff's diagnoses were cognitive disorder NOS, depressive disorder NOS, noncompliance to medical regimen, relational problem, and rule out conversion disorder. *Id.* Dr. Smith noted that Plaintiff began taking classes at Edison Community College in January, 2004, that he obtained a B in a psychology course, an A in a computer science corse, and a satisfactory grade in an English course, that Plaintiff believed his problems had improved since February, 2003, and indicated that he had improved function in the area of speech as well as cognitive function, that he was alert and fully oriented, and that his speech was mildly slowed and had improved considerably since February, 2003. *Id.* Dr. Smith also noted that Plaintiff's information processing rate was slowed, he denied depression, his affect was broad, bright, and appropriate, his psychomotor rate was slowed, the current testing showed considerable improvement in a broad range of neurophysical functions, he continued to have mild difficulties in the areas of attention and concentration, his information processing speed continued to be slowed with verbal stimuli and material, but appeared to be within the average range, that his ability to learn and remember nonverbal information was well above average, and that his verbal IQ was 79, his performance IQ was 92, and his full scale IQ was 84. *Id.* Dr. Smith opined that Plaintiff appeared to be doing well on his current antidepressant dosage and appeared free from clinically significant depressive or anxiety-related symptomatology, and that his diagnosis was cognitive disorder NOS. *Id.*

Plaintiff was hospitalized December 9-10, 2004, for treatment of a probable CVA with left-sided weakness, paresthesia, and a facial droop. (Tr. 323-28). During that hospitalization, Plaintiff's blood sugar was over 300 and his MRA/MRI did not reveal any kind of abnormality. *Id.* Plaintiff was discharged with the diagnoses of possible cerebral vascular accident, paresthesia left

9

side, and diabetes out of control. *Id.*

An MRI of Plaintiff's lumbar spine performed on August 24, 2005, revealed minimal broad base disc bulge and small right paracentral disc protrusion at L4-5, a small central disc protrusion at L5-S1, multilevel facet arthropathy, and degenerative disc disease consisting of disc desiccation at L4-L5 and L5-S1. (Tr. 519-20).

Plaintiff was hospitalized September 14-19, 2005, after being seen in the emergency room for elevated blood sugar and vomiting. (Tr. 546-692). Plaintiff was initially admitted to the intensive care unit where his condition was eventually stabilized. *Id.* During that hospitalization, it was noted that Plaintiff was having a difficult time handling his medications as well as his insulin requiring social services intervention for support upon discharge. *Id.* It was also noted that Plaintiff's partial dementia and psychiatric diagnosis required intervention. *Id.* Plaintiff was treated and discharged with the diagnoses of acute pancreatitis, diabetic ketoacidosis, hyperlipidemia, coronary artery disease, status post myocardial infarction, sleep apnea, hypothyroidism, hypertension, cerebrovascular accident history, and mild dementia. *Id.*

Dr. Rawlins reported on February 9, 2007, that Plaintiff was able to lift/carry up to 20 pounds occasionally and 10 pounds frequently, stand/walk for a total of 2 hours in an 8 hour day and for 1/4 hour without interruption, sit for 4 hours in an 8 hour day and for 1 hour without interruption, that he needed a sit/stand/recline option, and that he experienced moderate to severe pain. (Tr. 771-74).

Plaintiff alleges in his [Statement of Specific Errors] that the Commissioner erred by rejecting Dr. Rawlins' opinion and by finding that he is capable of performing a range of light work. (Doc. 8).

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

The reason for the "treating physician rule" is clear: the treating physician has had a greater opportunity to examine and observe the patient. *See, Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992). Further, as a result of his or her duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. *Id.* (citation omitted).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only

11

appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

In rejecting Dr. Rawlins' opinion that Plaintiff has been disabled since November, 2002, Judge Padilla essentially determined that Dr. Rawlins' opinion is not supported by her clinical notes and are inconsistent with the other evidence of record. (Tr. 28-31). This Court agrees.

As noted above, Dr. Rawlins opined on June 9, 2003, that Plaintiff had been disabled since November, 2002, due to CVA, dementia, and left hemiplegia. However, Dr. Rawlins' clinical notes reflect that she primarily provided monitoring for Plaintiff's diabetes and hyperlipidemia. *See, e.g.,* Tr. 332, 337, 341, 342, 751, 764. In addition, Dr. Rawlins' contemporaneous notes contain few objective findings which support her opinion that Plaintiff is disabled. *See, Id.* Further, Dr. Rawlins opinion is inconsistent with the findings and conclusions of Dr. Elshoff, Dr. Jacobs, Dr. Smith, and Dr. Kitchener. For example, Dr. Elshoff opined that Plaintiff was able to return to work. Further, Dr. Jacobs reported that Plaintiff had symmetric motor strength with some giveaway weakness on the left which, after repeated attempts at cooperation, was essentially intact, that his sensory exam and reflexes were symmetric, and that Plaintiff was, at worst, limited in his ability to return to stable, gainful employment. In addition, Dr. Smith noted that Plaintiff's functional status was consistent

with a return to gainful employment and Dr. Kitchener reported that Plaintiff had good motor strength and that he could return to sedentary work. Moreover, Dr. Rawlins' opinion is inconsistent with the reviewing physicians' opinions. *See,* Tr. 225-33; 287-95. Finally, Dr. Rawlins' opinion is inconsistent with Plaintiff's reported activities including performing household chores, shopping, and attending classes at Edison Community College where his grades were As and Bs.

Under these facts, the Commissioner had an adequate basis for rejecting Dr. Rawlins' opinion that Plaintiff is disabled.

Plaintiff argues next that the Commissioner erred by finding that he is capable of performing a limited range of light work. In support of this argument, Plaintiff relied primarily on the same argument he raised with respect to Dr. Rawlins' opinion. However, as noted above, the Commissioner had an adequate basis for rejecting Dr. Rawlins' opinion.

The question is, of course, whether the record contains substantial evidence to support the Commissioner's conclusion that Plaintiff is capable of performing a limited range of light work. This Court concludes that it is.

First, as noted above, Dr. Elshoff, Plaintiff's treating physician, opined in March, 2003, that Plaintiff was able to return to work. Additionally, Dr. Jacobs reported that Plaintiff's ability to return to a stable and gainful employed position was, at worst, "limited" and Dr. Kitchener reported that Plaintiff was able to return to work.[1] Further, Dr. Smith concluded that Plaintiff's functional status was consistent with a return to gainful employment. Finally, the Commissioner's finding that Plaintiff is capable of performing a limited range of light work is consistent with his

---

[1] Although Dr. Kitchener reported that Plaintiff was able to return to "sedentary" work, he did not define what he considered to be sedentary work. Nevertheless, Dr. Kitchener offered his opinion shortly after Plaintiff's November, 2002, hospitalization and, in view of the other record evidence, it was not unreasonable for the Commissioner to view the limitation to "sedentary work" as a short-term limitation.

13

activities, *supra*, as well as with the reviewing physicians' opinions.

Plaintiff's argument that his need to use a cane is inconsistent with the ability to perform a limited range of light work is not persuasive. Even assuming that Plaintiff requires the use of a cane, the VE testified at the first administrative hearing that the use of an ambulatory aid would not have an affect on the number of jobs available to individual with Plaintiff's limitations. (Tr. 799).

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

December 18, 2008.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).